Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>RECURRIDO<br><br>V.<br><br>EDWIN CEDEÑO ORTIZ<br><br>RECURRENTE | TA2026RA00091 | *Revisión Judicial* procedente del Departamento De Corrección y Rehabilitación, Remedios Administrativos<br><br>Querella Núm. B-1321-25<br><br>Sobre: Privación del servicio de recreación activa |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 15 de mayo de 2026.

### I.

El 5 de marzo de 2026, el señor Edwin Cedeño Ortiz (señor Cedeño Ortiz o recurrente), quien se encuentra privado de libertad bajo la custodia del Departamento de Corrección y Rehabilitación (DCR), presentó ante este Tribunal, por derecho propio, un escrito titulado *Revisión Judicial Administrativa*,[1] en la que solicitó que revoquemos la *Resolución* emitida por la *División de Remedios Administrativos* del Departamento de Corrección y Rehabilitación (DCR o recurrida) el 27 de octubre de 2025, de la cual solicitó reconsideración el 21 de noviembre de 2025, la que fue acogida y se emitió Resolución de Reconsideración el 21 de enero de 2026.[2]

El 6 de marzo de 2026, emitimos una *Resolución* donde concedimos al DCR un término de 10 días, contados a partir de la notificación de dicha Resolución, para que le proporcionara al señor Cedeño Ortiz la Declaración en Apoyo de Solicitud para Litigar como

---

[1] Véase entrada núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[2] Véase apéndice núm. 2 de la entrada núm. 1 de SUMAC-TA.

Indigente (*In forma Pauperis*) y entregara a este tribunal la Declaración en Apoyo de Solicitud para Litigar como Indigente (*In forma Pauperis*) debidamente cumplimentada por el señor Cedeño Ortiz y juramentada, para que formara parte del expediente del caso. En adición y en auscultar nuestra jurisdicción, le concedimos al DCR hasta el 24 de marzo de 2026 para certificar la fecha en que se notificaron al recurrente las determinaciones emitidas por la División de Remedios Administrativos.[3]

El 11 de marzo de 2026, el recurrente presentó una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia* (Formulario OAT 1480).[4]

El 12 de marzo de 2026, emitimos una *Resolución* en la que autorizamos al señor Cedeño Ortiz a litigar *In forma Pauperis* y por derecho propio.[5]

En cumplimiento con lo ordenado, el 24 de marzo de 2026, el DCR, representado por la Oficina del Procurador General, presentó una *Moción en Cumplimiento de Resolución* en el que sometió los documentos requeridos para auscultar nuestra jurisdicción.[6]

Determinado que tenemos jurisdicción para intervenir, concedimos a la parte recurrida hasta el 10 de abril de 2026 para presentar su alegato en oposición.[7] Lo que fue cumplido, en el término concedido.[8]

El 30 de abril de 2026, el recurrente presentó una *Réplica a Escrito en Cumplimiento de Resolución* en la cual reiteró sus planteamientos esbozados en el recurso, para que revoquemos la Resolución recurrida.[9]

---

[3] Véase entrada núm. 2 de SUMAC-TA.
[4] Íd., entrada núm. 3.
[5] Íd., entrada núm. 4.
[6] Íd., entrada núm. 5.
[7] Íd., entrada núm. 6.
[8] Íd., entrada núm. 7.
[9] Íd., entrada núm. 8.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y pormenorizamos los hechos procesales más relevantes para su atención.

**II.**

Según consta del expediente digital ante nuestra consideración, el recurrente suscribió una *Solicitud de Remedio Administrativo* que fue presentada ante la División de Remedios Administrativos del DCR el 2 de septiembre de 2025.[10] Alegó que el 26 de agosto de 2025, tuvo un incidente con el Oficial Cruz, del área recreativa quien, bajo instrucciones de la comandante de turno, le negó el servicio de recreación activa por no tener la barba afeitada. Manifestó que padece de una condición de piel que le causaba irritaciones de la piel y le impedía afeitarse, pero que podía cumplir con las normas manteniendo su barba "debidamente acicalada".[11]

La respuesta de la Sra. Valentín Lugo, evaluadora, fue que "sobre este asunto se le solicitó si tenía alguna autorización, el cual alegó que no lo tenía, se le preguntó so autorizaba verificar su expediente médico para verificar si existe algún documento, pero no lo hizo".[12] Insatisfecho, el señor Cedeño Ortiz sometió una *Solicitud de Reconsideración* donde arguyó que "[la teniente Mary J. Figueroa] se ampar[ó] en la mentira para justificarse".[13]

La División de Remedios Administrativos del DCR acogió la solicitud de reconsideración, el 5 de diciembre de 2025.

En su consecuencia, el 21 de enero de 2026 emitió una Resolución, en la que resolvió confirmar y ampliar su determinación previa.

Determinó orientar al recurrente "que solicite una certificación del Área Médica de su condición de la piel (cara) para

---

[10] Véase apéndice núm. 1 de la entrada núm. 1 de SUMAC-TA.
[11] *Íd.*
[12] *Íd.*
[13] *Íd.*

que pueda mostrarla al área de Seguridad; así podrán ofrecer los servicios de recreación debidamente informados. La comunicación es fundamental para evitar malos entendidos. Es responsabilidad del miembro de la población correccional tener evidencia de sus condiciones médicas y ser asertivo en sus gestiones".

Inconforme, el Sr. Cedeño Ortiz recurre ante nos. Señaló los siguientes errores:

> ERROR NÚM. 1: Erró el Oficial asignado como líder recreativo al querer obligarme en contra de mi voluntad a afeitarme la barba totalmente y no conformarse con que yo la tenga acicalada, bajo amenaza de privarme de un servicio al cual tengo derecho como lo es la recreación activa.

> ERROR NÚM. 2: Erró el Oficial de recreación por darme una orden contraria al derecho en cuanto al aseo físico personal.[14]

Tras varios incidentes procesales, compareció el DCR y expone que en el Artículo X (B)(1)(a) del Manual sobre el Plan de Mantenimiento y Salud Ambiental del DCR del 22 de agosto de 2008, vigente actualmente, se dispone que el propósito del plan de mantenimiento diario es "[m]antener la limpieza y el control de bacterias y otros organismos que producen enfermedades y malos olores, así como la apariencia física de la institución". De manera que la agencia tiene normas escritas que facultan al DCR y a sus oficiales de corrección para decidir si un confinado debe recortarse y mantener una higiene aceptable. Además, que las solicitudes de miembros de la población correccional no pueden ir por encima de los objetivos de higiene y seguridad institucional que tiene el Estado, los cuales son de carácter apremiante.

También, destacan la importancia de controlar este aspecto de los confinados ya que las barbas pueden ser utilizadas para ocultar material de contrabando o armas. Argumentan que este hecho justifica limitar el uso de la barba en las instituciones penales

---

[14] *Íd.*

ante el interés gubernamental de mantener la seguridad interna. Por otra parte, señalan que un confinado que cuenta con un certificado médico para tener barba debido, por ejemplo, a una condición dermatológica en el rostro (e.g. psoriasis), podrá tener esta sin necesidad de que se afeite. Por lo cual, el DCR actuó conforme a derecho y la determinación recurrida, debe ser confirmada.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.* (LPAU), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-591 (2020); ***Rolón Martínez v. Supte. Policía***, 201 DPR 26, 35 (2018).

El foro apelativo deberá ser deferente a las determinaciones de los organismos administrativos, en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. ***Katiria's Café, Inc. v. Municipio Autónomo de San Juan***, 2025 TSPR 33, 215 DPR __ (2025) (resuelto el 27 de marzo de 2025); ***Rolón Martínez v. Supte. Policía***, supra; ***Torres Rivera v. Policía de PR***, 196 DPR 606, 626 (2016).

Sin embargo, recientemente, el Tribunal Supremo, en ***Vázquez v. Consejo de Titulares***, 216 DPR ___ (2025), 2025 TSPR 56, haciendo eco de lo resuelto en ***Loper Bright Enterprises v. Raimondo***, 603 U.S. 369 (2024), dictaminó que la interpretación de

la ley es una tarea que corresponde inherentemente a los tribunales. De esa manera, enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU. *Vázquez v. Consejo de Titulares*, supra. Por ello, se pautó que será deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos, por los mecanismos interpretativos propios del Poder Judicial y no guiados por la deferencia automática. *Vázquez v. Consejo de Titulares*, supra.

No obstante, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Jta de Planificación et al.,* 204 DPR 581, 591 (2020); *Rolón Martínez v. Supte. Policía,* supra; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la <u>razonabilidad</u> en la actuación de la agencia. *Otero v. Toyota,* 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte Policía,* supra; *Rebollo v. Yiyi Motors,* supra.

La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o

ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. ***Super Asphalt v. AFI y otros***, 206 DPR 803, 819 (2021); ***Torres Rivera v. Policía de Puerto Rico***, supra, pág. 628.

Dichos procedimientos se distinguen del proceso judicial ordinario al promover la flexibilidad y proveer un mecanismo más económico para que la ciudadanía reclame sus derechos. ***Acarón et al. v. D.R.N.A.***, 186 DPR 564, 583 (2012). No obstante, la flexibilidad e informalidad del proceso administrativo, es menester que los mismos cumplan con "las garantías mínimas que exige el debido proceso de ley, ya que las decisiones administrativas tienen el alcance de afectar los intereses propietarios o libertarios de las personas". *Íd.*

**B.**

La División de Remedios Administrativos del DCR se estableció con el propósito principal de proveerles a los miembros de la población correccional un organismo administrativo al cual puedan recurrir en primera instancia mediante una solicitud de remedio. A tenor con dicho fin, el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional* del DCR, Reglamento Núm. 8583 del 4 de mayo de 2015 (Reglamento Núm. 8583), establece el procedimiento para atender las solicitudes de remedios presentadas por las personas recluidas en las instituciones correccionales de Puerto Rico, que se atenderán ante la División de Remedios Administrativos.

La División de Remedios Administrativos del DCR posee jurisdicción para atender toda Solicitud de Remedio radicada por los miembros de la población correccional sobre cualquier incidente o reclamación comprendida bajo las disposiciones del reglamento.

Regla VI del Reglamento Núm. 8583, *supra*, pág. 13. Una solicitud de remedio es un recurso que presenta un miembro de la población correccional por escrito sobre una situación que afecta su calidad de vida y seguridad relacionado con su confinamiento. Regla IV (24) del Reglamento Núm. 8583, *supra*, pág. 10.

**C.**

El Manual sobre el Plan de Mantenimiento y Salud Ambiental (Manual) tiene el propósito de establecer los procedimientos para cumplir con las normas de salud ambiental aplicables y proveer instrucciones generales relacionadas con la higiene, limpieza y mantenimiento en las instituciones correccionales. **Manual sobre el Plan de Mantenimiento y Salud Ambiental**, Departamento de Corrección, 2008, pág. 1.

En la Sección XI del referido Manual, se enumeran las reglas atinentes a la higiene personal de los miembros de la población correccional. El inciso (C)(1)(a) de dicho Artículo dispone que "el cuidado del cabello de los miembros de la población correccional en general y de los que se encuentran en áreas de segregación cumplirán con los requerimientos de salud aplicables". Manual, supra, pág. 83. Asimismo, el inciso C (1)(d) establece que "los supervisores podrán exigirle a un miembro de la población correccional que se bañe o se **recorte**, si fuese necesario **por razones de higiene**". (Énfasis suplido). *Íd.*

A su vez, se define *higiene* como el conjunto de conocimientos y técnicas que deben aplicar los individuos para el control de los factores que ejercen o pueden ejercer efectos nocivos sobre la salud, por tanto, tiene por objeto la conservación de la salud y la prevención de enfermedades. Artículo IV (5) del Manual, supra, pág. 2.

**IV.**

En el presente recurso, el señor Cedeño Ortiz reclama que se le dio una orden contraria a derecho en cuanto al aseo físico personal por exigírsele que se afeite la barba. No le asiste la razón. Esta determinación está acompañada de una presunción de legalidad y corrección, basada en motivos de salud y de seguridad.

Esencialmente, el recurrente manifiesta que no podía afeitarse la barba, pues tan solo podía "acicalarla" por su condición de la piel. En atención a ello, el DCR le solicitó si tenía alguna autorización para ello, pero este indicó que no la tenía.[15] La Respuesta al remedio demuestra que se le preguntó, además, si autorizaba revisar su expediente médico para verificar si existía algún documento que así lo indicara, pero también se negó a ello.[16] Conforme a las normas aplicables y a la jurisprudencia interpretativa discutida previamente, el DCR actuó correctamente al indicarle al recurrente que solicitara una certificación médica del área médica sobre su condición para de esa forma, mostrarla al área de seguridad y recibir los servicios de recreación debidamente informados. Las respuestas ofrecidas por la DRA en este caso están acorde a los intereses apremiantes del DCR en cuanto a la seguridad y salubridad de la institución correccional.

Adviértase, que el recurrente incluyó con su recurso un documento de Correctional Health Service Corp., del **28 de enero de 2016** en el que se solicita el uso de trimmer porque no puede afeitarse con navajas; siendo un documento de mucho tiempo de expedido **(hace 10 años)** debe ser actualizado.

La Respuesta del DCR es adecuada ya que existen unos objetivos de seguridad e higiene que, en este caso, son apremiantes. Es de suma importancia que el DCR tenga la potestad de controlar estas normas de higiene porque permiten mantener la limpieza,

---

[15] Véase apéndice del recurso, pág. núm. 3, entrada núm. 1 de SUMAC-TA.
[16] Íd.

controlar las bacterias u otros organismos y facilitan el control de la seguridad interna en las instituciones penales. A la vez, le proveyó al señor Cedeño Ortiz la oportunidad de evidenciar su condición médica para atender su reclamo como excepción a la norma general. En vista de ello, no debemos intervenir con la determinación recurrida.

En vista de lo anterior, concluimos que debemos otorgarle deferencia a la decisión recurrida; no avistamos evidencia alguna que derrote la presunción de corrección de la cual ésta goza.

**V.**

Por los fundamentos pormenorizados, se confirma la determinación recurrida.

**Notifíquese al Secretario del Departamento de Corrección**. **El Departamento de Corrección deberá entregar copia de esta *Sentencia* al señor Cedeño Ortiz, en cualquier institución donde este se encuentre**.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones